F I L E D
Clerk
District Court

OCT 01 2017

for the Northern Mariana Islands
By_____
(Deputy Clerk)

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN MARIANA ISLANDS**

HONG KONG ENTERTAINMENT
(OVERSEAS) INVESTMENTS LTD., doing
business as Tinian Dynasty Hotel and Casino,

                     Plaintiff,

       v.

UNITED STATES CITIZENSHIP AND
IMMIGRATION SERVICES, ELAINE DUKE,
in her official capacity as Acting Secretary of the
United States Department of Homeland Security,
and JAMES MCCAMENT, in his official
capacity as Acting Director, United States
Citizenship and Immigration Services,[1]

                     Defendants.

Case No. 1:16-CV-00009

DECISION AND ORDER GRANTING
MOTION TO DISMISS FOR LACK OF
JURISDICTION

## I.    INTRODUCTION

Before the Court is Defendants' Motion to Dismiss Plaintiff's First Amended Complaint Under Rules of Civil Procedure 12(b)(1) and 12(b)(6). (Oct. 14, 2016, ECF No. 13.) The motion has been fully briefed and was heard on January 19, 2017. Having considered all the briefs, declarations and exhibits submitted by the parties,[2] as well the oral arguments of counsel, the Court now GRANTS the motion for lack of subject matter jurisdiction and dismisses the case with prejudice.

---

[1] As official-capacity defendants, Elaine Duke has been automatically substituted for Jeh Johnson, and James McCament has been automatically substituted for Leon Rodriguez, under Rule 25(d) of the Federal Rules of Civil Procedure.

[2] These include: Memorandum in Support of Defendants' Motion to Dismiss (ECF No. 14); Declaration of Stephanie Chau (ECF No. 14-1); Declaration of Counsel Opposing Motion to Dismiss of Lack of Jurisdiction (ECF No. 19) and Errata to ¶ 32 (ECF No. 20 and 20-1); Exhibits 1 and 2 (attached to First Amended Petition for Judicial Review, ECF No. 7) and 3 through 8 (attached to ECF No. 19); Plaintiff's Memorandum Opposing Motion to Dismiss for Lack of Subject Matter Jurisdiction and Failure to State a Claim (ECF No. 21); Defendants' Reply (ECF No. 22) and Exhibit A (Second Declaration of Stephanie Chau, ECF No. 22-1).

## II.     BACKGROUND AND PROCEDURAL POSTURE

Plaintiff Hong Kong Entertainment (Overseas) Investments, Ltd. ("HKE") does business in the CNMI as the Tinian Dynasty Hotel and Casino. (First Amended Petition ("FAP") ¶ 3, ECF No. 7.) It relies heavily on foreign workers to operate the hotel and casino. (FAP ¶ 16.) In 2014, it applied to United States Citizenship and Immigration Services ("USCIS") for permission to hire foreign workers under the CNMI-Only Transitional Worker ("CW-1") visa classification system and timely submitted I-129CW extension petitions and an I-129CW transfer petition. (FAP ¶¶ 15, 18.). By letters dated in December 2014 and February and April 2015, USCIS, through its California Service Center, denied all of HKE's petitions, primarily on the grounds that HKE was not engaged in a legitimate business. (FAP ¶¶ 19–21.) Federal regulations require that to be eligible to petition for a CW-1 nonimmigrant worker, an employer must be "engaged in legitimate business." 8 C.F.R. § 214.2(w)(4)(i). A business is not considered legitimate "if it engages directly or indirectly in prostitution, trafficking in minors, or any other activity that is illegal under Federal or CNMI law." 8 C.F.R. § 214.2(w)(1)(vi). HKE appealed (FAP ¶ 22), and in a series of decisions rendered February 1–3, 2016, the USCIS Administrative Appeals Office affirmed the denials (FAP ¶¶ 23–25). In all, 151 denials were affirmed upon appeal. (*See* Ex. 1, List of Denied Appeals, ECF No. 7-1.) It found that HKE had willfully violated the reporting provisions of the Bank Secrecy Act and therefore concluded that it had "engaged in activities that are illegal under federal law." (Ex. 7-2, Non-Precedent Decision of the Administrative Appeals Office 4, Feb. 3, 2016, ECF No. 7-2.) The denials affected more than three-quarters of HKE's employees. (FAP ¶ 30.)

On March 7, 2016, HKE petitioned this Court for judicial review of administrative action under 5 U.S.C. § 702. (Petition for Judicial Review, ECF No. 1.) In response to a Rule 12(b) motion to dismiss by Defendants (Sept. 12, 2016, ECF No. 6), HKE timely filed a First Amended

Petition for Judicial Review. (Sept. 21, 2016, ECF No. 7.) In the FAP, HKE asserts that the USCIS's final agency action has "stigmatized HKE by branding it as an illegitimate business (FAP ¶ 35), and that this action has deprived HKE, a U.S. citizen, of its right to due process of law and contravenes Congress's intent in passing the Consolidate Natural Resources Act of 2008 ("CNRA"), which authorized the Secretary of Homeland Security and other agencies to implement a transition program from CNMI control of immigration to federal control under the Immigration and National Act. *See* Pub. L. 110-229 (May 8, 2008), title VII, sec. 702, codified at 48 U.S.C. § 1806(a). Specifically, the Secretary is empowered to "establish, administer, and enforce a system for allocating and determining the number, terms, and conditions of permits to be issued to prospective employers" for each nonimmigrant worker. 48 U.S.C. §1806(d)(2). HKE claims that the denial of its petitions was arbitrary and capricious (First Claim for Relief ¶¶ 42–44); that it was wrongly deprived of notice and an opportunity to be heard as to USCIS's determination to rely on ongoing criminal proceedings against HKE in finding that HKE was not a legitimate business (Second Claim for Relief ¶¶ 45–54); that the regulations lack guidance and standards for determining whether a business is legitimate (Third Claim for Relief ¶¶ 55–60); and that USCIS's stigmatization of HKE infringes on its liberty interest as protected by the Fifth Amendment (Fourth Claim for Relief ¶¶ 61–70).

Defendants responded by moving to dismiss the FAP for lack of subject matter jurisdiction (Fed. R. Civ. P. 12(b)(1)) and failure to state a claim (Fed. R. Civ. P. 12(b)(6)), and it is that motion which is now before the Court.

**III.    LEGAL STANDARDS**

Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, a defendant may seek to dismiss a complaint for lack of jurisdiction over the subject matter. The federal court is one of

1   limited jurisdiction. *See Gould v. Mut. Life Ins. Co. v. New York*, 790 F.2d 769, 774 (9th Cir. 1986).

2 As such, it cannot reach the merits of any dispute until it confirms its own subject matter

3 jurisdiction. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 95 (1998). When considering

4 a Rule 12(b)(1) motion to dismiss, the district court is free to hear evidence regarding jurisdiction

5 and to rule on that issue prior to trial, resolving factual disputes where necessary. *See Augustine v.*

6 *United States*, 704 F.2d 1074, 1077 (9th Cir. 1983). In such circumstances, "[n]o presumptive

7 truthfulness attaches to plaintiff's allegations, and the existence of disputed facts will not preclude

8 the trial court from evaluating for itself the merits of jurisdictional claims." *Id.* (quoting *Thornhill*

9 *Publ'g Co. v. Gen. Tel. & Elec. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979)). Plaintiff, as the party

10 seeking to invoke jurisdiction, has the burden of establishing that jurisdiction exists. *See Kokkonen*

11 *v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

12       Under Rule 12(b)(6), a complaint must be dismissed if it fails to state a claim upon which

13 relief can be granted. On consideration of a Rule 12(b)(6) motion, all well-pleaded factual

14 allegations are taken as true. *Hebbe v. Pliler,* 627 F.3d 338, 341–42 (9th Cir. 2010). Although a

15 complaint does not need "detailed factual allegations, ... a plaintiff's obligation to provide the

16 grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic

17 recitation of the elements of a cause of action will not do[.]" *Bell Atl. Corp. v. Twombly,* 550 U.S.

18 544, 555 (2007) (citations and internal quotation marks omitted). Legal conclusions couched as

19 factual allegations do not suffice. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). The claim to relief

20 must contain sufficient well-pleaded facts to be "plausible on its face." *Twombly*, 550 U.S. at 570

21 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court

22 to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*,

23 556 U.S. at 678. The purpose of this standard is "to give fair notice and to enable the opposing

24

1  party to defend itself effectively[,]" and to ensure "that it is not unfair to require the opposing party

2  to be subjected to the expense of discovery and continued litigation." *Starr v. Bacca,* 652 F.3d

3  1202, 1216 (9th Cir. 2011).

4  **IV.  DISCUSSION**

5  Defendants assert that this Court lacks subject matter jurisdiction because HKE does not

6  have standing to sue. To establish standing, plaintiffs must show (1) that they have suffered an

7  injury in fact, (2) a sufficient "causal connection between the injury and the conduct complained

8  of," and (3) a likelihood that the injury will be redressed by a favorable decision. *See Susan B.*

9  *Anthony List v. Dreihaus,* __ U.S. __, 134 S. Ct. 2334, 2341 (2014) (quoting *Lujan v. Defenders*

10  *of Wildlife,* 504 U.S. 555, 560 (1992)). To be sufficient for standing, the injury must be "concrete

11  and particularized, and actual or imminent, not conjectural or hypothetical." *Id.* (quoting *Lujan,*

12  504 U.S. at 560, internal quotation marks omitted).

13  Defendants contend that HKE's alleged injuries are not redressible because the one-year

14  time period that the CW-1 petitions covered has already expired. (Memo. MTD, p. 6.)[3] Congress

15  has mandated that the number of transitional worker permits allocated be reduced on an annual

16  basis, such that by the end of the transition period on December 31, 2019, the number is zero. 48

17  U.S.C. § 1806(d)(2). The Department of Homeland Security ("DHS") sets the numerical limitation

18  for each year. 8 C.F.R. §214.2(w)(1)(viii)(C). Unused numbers do not carry over to the next year.

19  8 C.F.R. §214.2(w)(1)(viii)(E). An approved petition is valid for up to one year. 8 C.F.R. §

20  214.2(w)(13). Employers may petition to extend an employee's CW-1 nonimmigrant status for up

21  to one year by filing a new petition before the validity of the original petition has expired. 8 C.F.R.

22  §214.2(w)(17).

23

---

24  [3] All page references in docket entries are to CM-ECF pagination.

1    HKE has never reapplied for CW-1 permits for these workers or petitioned to extend them.

2    Therefore, according to Defendants, HKE has not carried its burden to show that a favorable

3    judgment would redress an ongoing injury or a threat of an imminent future injury. (Memo. MTD,

4    p. 15.) A judicial finding that the agency erred in determining that HKE is not a legitimate business,

5    and a judicial declaration of HKE's legitimacy, would have no effect, because the petitions have

6    expired and no new petitions are pending.

7    HKE responds that USCIS's action injured it in two ways, by sullying its reputation and

8    by depriving it of much of its workforce, and that both these injuries are redressible by favorable

9    judicial action. (Opp., p. 15.)

10    1.  Reputational Harm

11    HKE points to a series of cases that find that a reputational injury resulting from

12    government action can satisfy the injury and causation factors, and that standing is established

13    when court action can restore plaintiff's reputation. It concludes that federal courts confer

14    constitutional standing "when a plaintiff seeks to remove a stigmatizing label imposed upon it by

15    a federal agency." (Opp., p. 16, citing *Foretich v. United States,* 351 F.3d 1198, 1213 (D.C. Cir.

16    2003).

17    The problem with this argument, as Defendants point out (Reply, p. 4), is that the very

18    cases cited by HKE limit standing to sue for a reputational injury in ways that exclude HKE's

19    claims. When reputational harm is the "byproduct of government action" which "itself no longer

20    presents an ongoing controversy[,]" the injury alone will not satisfy Article III standing. *Foretich,*

21    351 F.3d at 1212–13 (emphasis omitted). "Because the cause of the reputational harm is an

22    otherwise moot government action, a judicial declaration that the action was unlawful is not likely

23    to provide any further relief beyond that resulting from the expiration of the action itself." *Id.* at

24

1213 (where reputational injury was due to abrogation of visitation rights that were later restored). Claims of reputational injury "can be too vague and unsubstantiated to preserve a case from mootness." *McBryde v. Comm. to Review Circuit Council Conduct and Disability Orders,* 264 F.3d 52, 57 (D.C. Cir. 2001). In *McBryde,* a federal judge asserted standing to sue for damage to his reputation when a judicial council imposed a one-year suspension and three-year disqualification. *Id.* at 55. The appeals court found that claims of reputational harm owing to the suspension and disqualification, which had by that time expired, were moot. *Id.* "Insofar as the one-year and three-year suspensions may have continuing reputational effects . . . , they are not enough" to establish standing. *Id.* at 57.

Similarly, HKE's claims as to damage because of the denials of their petitions are moot because the time period to which the petitions applied expired long ago. HKE asserts that "the decisions designating HKE's hotel and casino operation as an illegitimate business have not expired and have not been retracted by USCIS." (Reply, pp. 20–21.) The issue at this stage of the analysis, however, is not whether the decisions have been vacated or "retracted" but whether the benefits period has expired. It has.

HKE may yet have standing to press its claims if its underlying dispute with the government is "capable of repetition, yet evading review." *Weinstein v. Bradford,* 423 U.S. 147, 149 (1975). "A dispute is capable of repetition if 'there [is] a reasonable expectation that the same complaining party would be subjected to the same action again'; it is likely to evade review if 'the challenged actions was in its duration to short to be fully litigated prior to its cessation or expiration.'" *Unabom Trial Media Coal. v. U.S. Dist. Court for the Eastern Dist. Of Cal. (Sacramento),* 183 F.3d 949, 950 (9th Cir. 1999) (quoting *Weinstein,* 423 U.S. at 149).

Clearly, the dispute of HKE's CW-1 petitions evades judicial review in this case. It took a

1  year or more for the USCIS Administrative Appeals Office to decide the administrative appeal of

2  each denial by director of the California Service Center, and by that time the one-year period for

3  which HKE had applied would have expired or been about to expire.

4  But the dispute is not capable of repetition. HKE asserts that the threat that the harm will

5  be repeated is realistic. (Opp., p. 21.) In support, it points to *Tenrec, Inc. v USCIS*, Case No. 16-

6  cv-995, 2016 WL 5346095 (D. Or. Sept. 22, 2016). In *Tenrec,* employers who had petitioned for

7  H-1B work visas for 2017 challenged the procedures by which USCIS processed petitions. *Id.* at

8  *3. USCIS moved to dismiss on grounds, *inter alia,* that the plaintiffs' injuries were not redressible

9  because the 2017 annual cap had already been reached and any future harm was merely

10  speculative. *Id.* at 11. The district court rejected those two arguments. First, the court observed that

11  the alleged wrong was not that plaintiffs' petitions were not selected but that the process itself, to

12  which their 2018 petitions would be subjected, is faulty. *Id.* "Plaintiffs are not asking the Court to

13  order USCIS to review or grant their petitions for fiscal year 2017." *Id.* A court order for USCIS

14  to change its process would, therefore, redress the harm to plaintiffs. *Id.* Second, the court found a

15  realistic threat of repeated harm because the alleged injury stems from a written policy of the

16  agency. *Id.*

17  HKE's claims are materially distinguishable from those in *Tenrec.* HKE is not challenging

18  an agency policy, but the decision USCIS reached with respect to its CW-1 petitions. Although its

19  claims include a due process violation – namely, that USCIS failed to give notice it was

20  considering the criminal allegations against HKE and to provide the company with an opportunity

21  to be heard – it does not allege a repeatable, systemic problem with the agency's procedures.

22  Moreover, unlike in *Tenrec,* HKE is asking the Court to set aside the administrative decisions and

23  to "remand" the petitions to USCIS "with instructions to process HKE's 1-129CW petitions in

24

1  accordance with the Court's order." (FAC, pp. 8–9.)

2      Additionally, HKE asserts that injury is continuing because the agency's finding that it is

3  not a legitimate business is "binding in all future dealings between USCIS and HKE." (Opp., p.

4  21.) The record, however, belies this assertion. The AAO decision expressly states that it "does

5  not prejudice or otherwise prevent the Petitioner from filing a new CW petition on behalf of the

6  Beneficiaries or other individuals, especially if the facts and circumstances have since changed

7  such that . . . the Petitioner can demonstrate that it is now an eligible employer engaged in

8  legitimate business." (Ex. 2, p. 9, n. 8.) HKE defends its position by citing to a note in another

9  AAO non-precedent decision that "[n]on-binding precedent decisions are only binding on the

10 parties to those cases[.]" *Matter of A-O-R-D-L,* 2016 WL 3361502, at *2 (DHS May 27, 2016).

11 This statement is drawn from a USCIS policy memorandum that distinguishes precedent decisions

12 from non-precedent decision. The context helps clarify the meaning: "Non-precedent AAO

13 decisions apply existing law and policy to a *unique factual record in an individual case.* The

14 decision is binding on the parties to the case but does not create or modify agency guidance or

15 practice." Precedent and Non-Precedent Decisions of the Administrative Appeals Office (AAO),

16 PM-602-0086.1 (USCIS Policy Memorandum, Nov. 18, 2013) (emphasis added). The

17 determination that HKE was not a legitimate business is limited to the individual case and does

18 not carry over to future petitions HKE may file.

19     Last, the alleged reputational harm to HKE is truly a "byproduct," *Foretich, op. cit.,* and

20 not a direct result of USCIS action. The agency did not reach out on its own and declare HKE an

21 illegitimate business. Rather, it followed regulations to determine whether HKE was an eligible

22 employer engaged in legitimate business. *See* 8 U.S.C. § 214.2(w)(4). Moreover, it did so at the

23 invitation of HKE, which was seeking a benefit from the agency.  Thus, HKE has not sufficiently

24

1    pleaded an injury that will satisfy Article III standing.

2           In contrast, in cases where courts have found standing to claim reputational harm, the

3    government acted on its own initiative to injure or threaten injury to the plaintiff. In *Joint Anti-*

4    *Fascist Refugee Commission v. McGrath,* the Department of Justice furnished the Loyalty Review

5    Board with the names of organizations that the Attorney General had determined were subversive,

6    and the Board disseminated them. 341 U.S. 123, 125 (1951). In *Meese v. Keene,* an attorney who

7    wished to exhibit three Canadian films that fit the statutory definition of "political propaganda."

8    481 U.S. 465, 467–70 (1987). Federal law required exhibitors of such expressive materials to

9    publicly disclose them as such. *Id.* at 470. The Supreme Court determined that the attorney had

10   standing to sue for injunctive relief from threatened harm to his reputation if he were to be regarded

11   as "the disseminator of foreign political propaganda." *Id.* at 467. In *Gully v. National Credit Union*

12   *Administration Board,* the National Credit Union Agency investigated fraud in a federally insured

13   credit union and found that plaintiff had "actively participated" in her father's misconduct. 341

14   F.3d 155, 160 (2d Cir. 2003). The Second Circuit determined that plaintiff had standing to sue for

15   reputational harm, even though the agency chose not to subject her to a prohibition order. *Id* at

16   161. In *McBryde, op. cit.*, after finding that a federal judge's reputational claims owing to expired

17   sanctions were moot, the D.C. Circuit determined that the continuing injury to his reputation from

18   the public reprimand contained in the Judicial Council's "stigmatizing reports" was sufficient to

19   confer standing. 264 F.3d at 56–57. Again, the alleged injury resulted from disciplinary action

20   initiated by the government.[4] And in *Foretich, op. cit.*, the D.C. Circuit found standing where

21

22   [4] HKE states correctly that, as in *McBryde,* the agency's decision is "available to the general public over the
internet." (Opp., p. 20; *see* Decl. of G. Anthony Long ¶ 11, ECF No. 20-1.) However, unlike in *McBryde,* 264 F.3d
23   at 56–57, the decision is not highlighted for the public's attention by a link on USCIS's home page. Nor is it linked
or mentioned on the agency's page devoted to U.S. immigration law in the CNMI. *See*
https://www.uscis.gov/laws/immigration-commonwealth-northern-mariana-islands-cnmi/us-immigration-law-
24   commonwealth-northern-mariana-islands-cnmi (last visited Sept. 29, 2017).

1  Congress took the initiative to pass a bill of attainder "embodying a congressional determination

2  that [Foretich] is a child abuser and a danger to his own daughter." 351 F.3d at 1213.

3  In all these cases in which HKE puts great stock, the government went out of its way,

4  unnecessarily, to characterize people or organizations in terms that harmed their reputation. In

5  none of them was the agency acting, as USCIS was here, at the request of a petitioner to determine

6  whether to confer a benefit. The Court finds, therefore, that USCIS's determination that HKE was

7  not a legitimate business within the statutory meaning during the time period in questioned is not

8  the sort of direct government action that supports Article III standing.

9      2.  Workforce Deprivation

10  HKE asserts it has pleaded injury sufficient to establish standing to bring a claim because

11  USCIS's wholesale denials of CW-1 permits "deprived it of the vast majority of its work force."

12  (Opp., p. 15.) HKE goes to some length to establish that petitioner employers themselves have

13  standing to challenge denials of petitions on behalf of particular nonimmigrant workers. (*Id.,* pp.

14  15–16.) This is undoubtedly true, but Defendants have never asserted otherwise. "As an initial

15  matter, HKE cannot rely on any injuries allegedly sustained by the alien-beneficiaries of its CW-

16  1 petitions, and not to HKE itself." (Def. Memo. MTD, p. 14.) Rather, Defendants contend that

17  any such injury is past and has "no present or future effect." (*Id.,* p. 15.) The periods for which

18  HKE petitioned have expired, and HKE is under no concrete and particularized, actual and

19  imminent threat of injury because no new CW-1 petitions have been filed and factual

20  determinations as to the expired petitions would not control decisions on new petitions. (*Id.,* p.

21  16.) The Court has already addressed these arguments in its discussion of standing to assert

22  reputational harm, and for the reasons stated there finds them persuasive.

23  HKE's alternative argument is that, as opposed to new-hire petitions, transfer and extension

24

petitions – the only petitions whose denials HKE appealed – do not require I-129CW petitions and

that under 8 C.F.R. §§ 214.2(w)(7) and (17) the agency could even now extend the validity period.

(Opp., pp. 23–25.) In support, HKE cites to another case that was in this Court involving a I-

129CW petition for a nonimmigrant worker, *Angando, Inc., v. United States,* No. 15-CV-00012.

In that case, plaintiff alleged that USCIS had wrongly denied the petition after erroneously finding

that plaintiff had not established that the worker was lawfully present in the CNMI at the time the

application was made in November 2011. After the complaint was filed in June 2015, the AAO

withdrew its decision, reopened the case, and, in November 2016, approved Angando's five-year-

old I-129 CW petition.

Defendants concede these facts. But they also show, through a declaration of a USCIS

section chief, that "the petition was approved with a one year validity period beginning on August

9, 2012 and expiring on August 8, 2013." (Decl. of Stephanie Chau, Jan. 5, 2017, ECF No. 22-1.)

The relief that Defendants got was not an extension of the work permit beyond the period originally

applied for, but a determination that its worker had been lawfully present at a particular point in

time.

Indeed, it is hard to see how HKE reads the statutory scheme the way it does. HKE asserts

that "[t]he regulations governing transfer petitions do not require the filing of a new petition as

USCIS contends in its dismissal motion. Even more so, HKE's petitions have not been finally

adjudicated as they are subject to the pending judicial review case." (Opp., p. 24.) And yet the

regulations say that an employee who is changing employers will not maintain her status unless

"[t]he prospective new employer files a petition to classify the alien as a CW-1 worker in

accordance with (w)(5) of this section" – (w)(5) governs new petitions – and "[a]n extension of

the alien's stay is requested if necessary for the validity period of the petition." 8 C.F.R. §

1 214.2(w)(7)(i) and (ii). Moreover, HKE's petitions have certainly been finally adjudicated –

2 otherwise HKE would not have exhausted administrative remedies and would not have recourse

3 to the judicial review. HKE's access to judicial review is circumscribed by the requirement of

4 constitutional standing, which is not satisfied if the courts cannot remedy the alleged injury.

5 As to extensions, HKE asserts that "the applicable regulations do not mandate the filing of

6 new petitions[.]" (Opp., p. 24.) That statement seems to contradict 8 C.F.R. §214.2(w)(17)(i),

7 which reads: "The petitioner may request an extension of an employee's CW-1 nonimmigrant

8 status by filing a new petition." Certainly, "may" shows that filing a new petition is optional. But

9 the language does not suggest an extension is sought in ways other than through filing a new

10 petition.

11 Similarly, HKE's argument that the extension period is not limited to the dates set forth in

12 the petition and "can commence from the date that USCIS approves the extension petition" (Opp.,

13 p. 24) is unsupported in the regulations themselves. Extensions are limited to one year, and are

14 "subject to the numerical limitation." 8 C.F.R. § 214.2(w)(17)(iii). Additionally, extensions can be

15 granted only if the beneficiaries have "[c]ontinuously maintained the terms and conditions of CW-

16 1 status[.]"  8 C.F.R. § 214.2(w)(17)(iii) and (iv)(A). Nowhere do the regulations expressly give

17 USCIS the authority to delay or expand the status period. Rather, the regulations' unremitting

18 focus on the annual numerical limitation suggests the contrary.

19 Because the period for which HKE petitioned for CW-1 permits for beneficiaries has

20 expired, the Court cannot provide a remedy for the alleged injury of workforce deprivation. HKE

21 therefore lacks standing.

22 **V.    CONCLUSION**

23 For the foregoing reasons, the Court GRANTS Defendants' Motion to Dismiss Plaintiff's

24

13

First Amended Complaint for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure. Because the Court lacks jurisdiction, it is unnecessary to determine whether HKE has failed to state a claim under Rule 12(b)(6). Because no amendment could cure the jurisdictional defect, leave to amend would be futile. The dismissal, therefore, is with prejudice.

The Clerk is directed to close the case and enter judgment in favor of Defendants.

IT IS SO ORDERED.

Dated this 1st of October, 2017.

RAMONA V. MANGLONA
Chief Judge

14